J. S09007/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DONALD W. QUEER, | : | No. 376 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, September 12, 2001,
in the Court of Common Pleas of Westmoreland County
Criminal Division at No. CP-65-CR-0000294-2000

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DONALD W. QUEER, | : | No. 377 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, September 12, 2001,
in the Court of Common Pleas of Westmoreland County
Criminal Division at No. CP-65-CR-0000293-2000

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DONALD W. QUEER, | : | No. 378 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, September 12, 2001,
in the Court of Common Pleas of Westmoreland County
Criminal Division at No. CP-65-CR-0000292-2000

BEFORE: FORD ELLIOTT, P.J.E., BOWES AND ALLEN, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:                **FILED JULY 10, 2015**

Appellant appeals from the judgment of sentence entered September 12, 2009, following appellant's various convictions related to three separate arsons. Finding no merit in the issues on appeal, we affirm.

This court previously recounted the procedural history of this case during appellant's appeal of the order dismissing appellant's fourth petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541 to 9546:

> The procedural history of this case is as follows. On June 7, 2001, a jury found Appellant guilty of numerous counts of arson and related offenses. On September 12, 2001, Appellant was sentenced to an aggregate term of no less than 29 and 1/3 nor more than 58 and 2/3 years' imprisonment at a state correctional institution. Appellant's post-sentence motions were denied on January 14, 2002, and no direct appeal was filed. On July 2, 2002, Appellant filed his first post-conviction petition, which was denied on February 24, 2003. This Court affirmed that order on April 7, 2004. On August 13, 2004, Appellant filed his second PCRA petition. The PCRA court dismissed this second petition as untimely in an order entered on March 22, 2005, and Appellant did not appeal this order. On April 11, 2005, Appellant filed his third PCRA petition in which he requested, for the first time, reinstatement of his direct appeal rights. The PCRA court reinstated Appellant's direct appeal rights on August 3, 2005. This Court quashed Appellant's appeal *nunc pro tunc* from the judgment of sentence on May 17, 2006, holding that

the PCRA court did not have jurisdiction to order the reinstatement of direct appeal rights. Our Supreme Court denied Appellant's petition for allowance of appeal on September 29, 2006.

Appellant filed the instant PCRA petition, his fourth, on November 8, 2006. The PCRA court dismissed the petition on December 12, 2006.

***Commonwealth v. Queer***, Nos. 147, 148, and 149 WDA 2007, unpublished memorandum at 2-3 (Pa.Super. filed December 12, 2007).

This court went on to affirm the dismissal of his fourth PCRA petition on the basis of untimeliness. Thereafter, appellant turned to the United States District Court for the Western District of Pennsylvania for relief, filing a petition for writ of ***habeas corpus*** on April 1, 2008. Ultimately, the federal court granted relief, ordering the District Attorney of Westmoreland County to petition the appropriate court to reinstate appellant's direct appeal rights. This timely appeal ensued.

Appellant raises the following issues on appeal:

I. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE VERDICTS AT ALL THREE CASES?

II. WHETHER DEFENDANT SHOULD BE GRANTED A NEW TRIAL BASED UPON TRIAL COUNSEL'S FAILURE TO REQUEST AN ALIBI INSTRUCTION ON ALL CASES?

Appellant's brief at 6.

Preliminarily, we note that we cannot review appellant's second issue, pertaining to an allegation of ineffective assistance of counsel, on direct

appeal. It is well-settled that such claims must await collateral review. **_Commonwealth v. Holmes_**, 79 A.3d 562, 563 (Pa. 2013). Consequently, we will not review appellant's second issue.

As for appellant's first issue, pertaining to the sufficiency of the evidence as to his various convictions, we find no error with the trial court's holding. After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, it is our determination that there is no merit to the question raised on appeal. Judge John E. Blahovec's meticulous, 15-page opinion, filed on January 14, 2002, comprehensively discusses and properly disposes of the sufficiency of the evidence question presented. We will adopt it as our own and affirm on that basis.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2015

IN THE COURT OF COMMON PLEAS
WESTMORELAND COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
)  292 C 2000
VS. )  293 C 2000
)  294 C 2000
DONALD W. QUEER )

OPINION OF COURT

The above captioned cases are before the Court for disposition of the Defendant's

Post Sentence Motions. The criminal information at case number 292 C 2000 charged

the Defendant as follows:

Count 1: Arson in violation of 18 Pa.C.S.A. §3301(a)(1)(i).
Count 2: Arson in violation of 18 Pa.C.S.A. §3301(a)(1)(ii).
Count 3: Arson in violation of 18 Pa.C.S.A. §3301(c)(2).
Count 4: Criminal Conspiracy in violation of 18 Pa.C.S.A. §903(a)(1).
Count 5: Recklessly Endangering Another Person in violation of
18 Pa.C.S.A. §2705.
Count 6: Recklessly Endangering Another Person in violation of
18 Pa.C.S.A. §2705.
Count 7: Criminal Mischief in violation of 18 Pa.C.S.A. §3304(a)(1).

These charges stem from a house fire (Piper Residence) in Cook Township, Latrobe,

Pennsylvania on February 28, 1999. The criminal information at case number 293 C

2000 charged the Defendant as follows:

Count 1: Arson in violation of 18 Pa.C.S.A. §3301(a)(1)(i).
Count 2: Arson in violation of 18 Pa.C.S.A. §3301(d)(1).
Count 3: Arson in violation of 18 Pa.C.S.A. §3301(d)(2).
Count 4: Criminal Mischief in violation of 18 Pa.C.S.A. §3304(a)(1).
Count 5: Criminal Solicitation in violation of 18 Pa.C.S.A. §902(a).

These charges stem from a fire at the Auto Haven, Inc. located on State Route 30 in

Derry Township in Westmoreland County on March 14, 1999. The criminal information

at case number 294 C 2000 charged the Defendant as follows:

ATTACHMENT A

Count 1: Arson in violation of 18 Pa.C.S.A. §3301(a)(1)(i).
Count 2: Arson in violation of 18 Pa.C.S.A. §3301(a)(1)(ii).
Count 3: Arson in violation of 18 Pa.C.S.A. §3301(c)(2).
Count 4: Arson in violation of 18 Pa.C.S.A. §3301(d)(2).
Count 5: Criminal Solicitation of 18 Pa.C.S.A. §902(a).

These charges stem from a mobile home fire (Loveridge residence) in Derry Township, Westmoreland County on April 9, 1999. All three cases were consolidated along with case number 519 C 2000 (arson related charges) and his co-defendant, David Ferguson's, five cases.

A jury trial at the above captioned cases began on May 29, 2001 and ended on June 7, 2001. The Defendant was acquitted at case number 519 C 2000 but was found guilty at the above captioned cases at all counts. Sentencing occurred on September 12, 2001 and the Defendant received the following sentence:

292 C 2000   Count 1: Not less than 10 nor more than 20 years incarceration at the Bureau of Corrections.
Count 2: No further sentence.
Count 3: Merges with Count 2.
Count 4: Not less than 3 nor more than 6 years incarceration at the Bureau of Corrections consecutive to Count 1.
Count 5: Merges with Count 1.
Count 6: Merges with Count 1.

293 C 2000   Count 1: Not less than 2 nor more than 4 years incarceration at the Bureau of Corrections consecutive to 292 C 2000.
Count 2: No further sentence.
Count 3: No further sentence.
Count 4: merges with Count 3.
Count 5: Not less than 16 months nor more than 32 months incarceration consecutive to Count 1.

294 C 2000   Count 1: Not less than 10 nor more than 20 years incarceration at the Bureau of Corrections consecutive to 293 C 2000.
Count 2: No further sentence.
Count 3: Merges with Count 2.
Count 4: Merges with Count 2.
Count 5: Not less than 3 nor more than 6 years incarceration at the Bureau of Corrections consecutive to Count 1.

2

At the sentencing hearing on September 12, 2001, the Defendant requested that new counsel be appointed to represent him in future proceedings. This Court ordered trial counsel to file post sentence motions to toll the appeal statute. New counsel was appointed after trial counsel, filed post sentence motions on September 14, 2001.

New counsel was instructed to file supplemental post sentence motions and supply a brief in support of said motions to the Court. By Court Order, dated November 29, 2001, counsel was reminded of the 120-day time constraints of Rule 720(3)(a), Pa.Rule.Crim.Proc., and again was ordered to submit to the Court supplemental motions and an accompanying brief. The 120-day time limit has been reached without this Court receiving anything additional from counsel.

This Opinion will address the original post sentence motions filed by trial counsel. The Defendant filed the following two motions:

(1)    The Defendant avers that the Commonwealth failed to establish, with sufficient evidence, the Defendant's guilt beyond a reasonable doubt at all counts at the above captioned cases.

(2)    The Defendant avers that the Court's sentence went outside the applicable aggravated ranges of sentencing and that the same was excessive and therefore requests reconsideration of sentence.

The standard of review in determining the sufficiency of the evidence, is "whether, accepting as true all of the evidence, be it direct or circumstantial, and all reasonable inferences arising therefrom upon which, if believed, the trier of facts could properly have based the verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted." (Citations omitted) Commonwealth v. Malone, 281 A.2d 866, 867 (Pa. 1971).

The Defendant at the above captioned cases was charged with arson in violation of 18 Pa.C.S.A. §3301(a)(1)(i), (a)(1)(ii), (c)(2), and (d)(2). These sections read as follows:

    (a) Arson endangering persons.

        (1) A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:

            i. he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire; or

            ii. he commits the act with the purpose of destroying or damaging an inhabited building or occupied structure of another.

18 Pa.C.S.A. §3301(a)(1)(i) and (ii).

    (b) Arson endangering property.

        A person commits a felony of the second degree if he intentionally starts a fire or causes an explosion, whether on his own property or that of another, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, and if:

        (2) he thereby recklessly places an inhabited building or occupied structure of another in danger of damage or destruction;

18 Pa.C.S.A. §3301(c)(2).

    (d) Recklessly burning or exploding.

        A person commits a felony of the third degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and thereby recklessly:

        (1) places an uninhabited building or unoccupied structure of another in danger of damage or destruction;or

        (2) places any personal property of another having a value that exceeds $5,000 or if the property is an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle in danger of damage or destruction.

18 Pa.C.S.A. §3301(d)(1) and (2).

4

In order to convict a person of arson, the prosecution must establish beyond a reasonable doubt that (1) there was a fire, (2) it was maliciously set, and (3) the defendant was the guilty party. Commonwealth v. Hardcastle, 546 A.2d 1101, 1108 (Pa. 1988).

At case number 292 C 2000 (Piper Fire) the Commonwealth presented the following evidence: Pam Piper testified that in the early morning hours of February 28, 1999 she was at home with her daughter, daughter-in-law, son, and boyfriend. She heard a loud noise like that of an explosion. At first she thought something was thrown through her glass window. Her daughter yelled that there was a fire. (Trial Transcript, pp. 229-232).

Miss Piper also testified that the evening before the fire, on February 27, 1999, around 8:00 p.m. that a white truck with a zigzag design on the side pulled into her driveway. Another vehicle pulled in beside the truck. There were three men; one in the truck and two in the other vehicle. The man got of the truck and spoke to one of the individuals in the other car. After a short period of time, the vehicles both left her driveway. At trial she identified the Defendant's truck as the truck in her driveway on February 27, 1999. (Trial Transcript, pp. 239-245).

Trooper Leslie Myers, a fire marshal for the Pennsylvania State Police, investigated the fire at the Piper residence. Trooper Myers testified that he found two Molotov cocktails at the Piper residence. The first was in a beer bottle found in the yard. The bottle contained a liquid that smelled like gasoline and had a piece of cloth as a wick through the top of the bottle. The second one was a Gold Schlagger bottle that contained BBs and gunpowder. (Trial Transcript, pp. 313-315, 331-332).

Trooper Myers also testified that the dryer vent in the back of the house had been burnt. What appeared to have been a water bottle was actually in the vent and had melted. The bottle smelled like gasoline. (Trial Transcript, pp. 318-324). Near the dryer vent was located the fuel pipe for the oil tank for the furnace. The lid for the oil tank had been removed. There was a wick on the ground and matches in the pipe. (Trial Transcript, p. 326). The Trooper concluded that the fire had been intentionally set by use of the Molotov cocktails and incendiary devices placed in the dryer vent and the oil tank's fuel pipe. (Trial Transcript, p. 336).

Connie Knauer, the ex-fiancé of David Ferguson, the Defendant's co-defendant, testified that she heard the Defendant tell Ferguson that he knew someone who wanted a house burned and would pay money for it. The Defendant, Ferguson, and Don Phillips left together to go see the house on Piper Ridge. The Defendant took his truck while the other two went in Ferguson's red firebird. Miss Knauer identified the Defendant's truck as the same one seen by Miss Piper on February 27, 1999. She also overheard the Defendant tell Ferguson that he was waiting for the money to pay for the job. (Trial Transcript, pp. 711-715).

Miss Knauer also testified that she knew what a Molotov cocktail was because she had seen them at Ferguson's apartment and had seen Ferguson making them. She had also helped Ferguson siphon gas out of one of his vehicles on the night of the fire at the Piper residence. Ferguson also told Miss Knauer that he had emptied out shotgun shells to be used for the fire on the Ridge. (Trial Transcript, pp. 732-736).

Donald Phillips testified that he overheard the Defendant tell Ferguson that he needed him to do a job. The Defendant indicated that he would show him where to go.

6

Ferguson then asked Phillips to go for a ride. Ferguson drove his red Camaro and the Defendant took his truck. Phillips identified the Defendant's truck as the same truck seen by Miss Piper. (Trial Transcript, pp. 777-781). Phillips testified that they went up on the Ridge and took some back roads and stopped at the end of dead end street. There was a house on the corner. The Defendant and Ferguson exited their vehicles and Phillips heard the Defendant tell Ferguson that that was the house. (Trial Transcript, pp. 782-785).

Phillips testified that he went to Ferguson's house. While there Ferguson pulled out a beer bottle with gasoline in it. Ferguson then asked how to take a shotgun shell apart. The gunpowder obtained was placed in the gasoline. Ferguson also grabbed a Golden Schlager bottle. Phillips took Ferguson back to the Ridge. Ferguson crawled under the trailer and when he came out handed Phillips a Budweiser beer bottle with a wick hanging out of it. Phillips gave Ferguson a lighter and Ferguson used the lighter to light another bottle that he threw at the house and it caught fire. Phillips dropped his bottle in the yard. They went back to Ferguson's place and Ferguson commented that he could not wait to get paid. (Trial Transcript, pp. 785-794).

This Court finds that this evidence was sufficient to convict the Defendant of arson in violation of 18 Pa.C.S.A. §3301(a)(1)(i)(ii) and (c)(2) has charged at 292 C 2000. The evidence clearly establishes that there was a fire, that the fire was intentionally set, and that the Defendant was responsible for the fire. The Defendant may not have been the torch but he acquired someone to burn the house and showed him where to find the house.

7

At this case number the Defendant was also charged with two counts of Recklessly Endangering Another Person in violation of 18 Pa.C.S.A. §2705. A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury. 18 Pa.C.S.A. §2705. The evidence sufficiently established that the Defendant ordered the burning of the Piper Residence. The evidence further established that this occurred in the early morning hours when Pam Piper and her family were at home. Anyone of the occupants of the house could have been killed or suffered serious bodily injury.

The Defendant was also charged with one count of Criminal Mischief. A person is guilty of criminal mischief if he:

> (1) damages tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means listed in section 3302(a) of this title (relating to causing or risking catastrophe).

The evidence, as stated above, clearly established that the fire was intentionally set and that the Piper residence suffered damage due to the fire. Criminal mischief was sufficiently established.

Finally the Defendant was also charged with one count of Criminal Conspiracy in violation of 18 Pa.C.S.A. §903(a)(1). This section is as follows:

> (a) A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime;

18 Pa.C.S.A. §903(a)(1). The evidence presented by the Commonwealth included the testimony of two individuals, Miss Knauer and Mr. Phillips, who overheard the

8

Defendant talking to Ferguson about burning a house on the Ridge. Phillips offered the testimony that he drove up to the Ridge with Ferguson and the Defendant and overheard the Defendant telling Ferguson which house. The Defendant's truck was identified by Miss. Piper as the truck she saw in her driveway the evening before the fire. Phillips testified as to his part in the fire at the Piper residence. This evidence was sufficient to establish that the Defendant conspired with Ferguson to burn the Piper residence.

At case number 293 C 2000 (Auto Haven Fire) the Commonwealth presented the following evidence: Trooper Leslie Myers testified that on March 14, 1999 that he was instructed to respond to the Auto Haven Dealership on State Route 30 in Latrobe, Pennsylvania. He observed a green Jaguar had been burnt out. Specifically the Jaguar's inside passenger compartment had sustained most of the damage. A vehicle next to the Jaguar was also damaged as well as the carport that the vehicles were parked under. (Trial Transcript, pp. 346 –348).

Trooper Myers testified that the point of origin in the Jaguar was the front seat and that in his opinion the fire had been intentionally set. There was an AMC Eagle that was also badly burnt. The Trooper found a piece of cloth down the gas tank of the vehicle. It was his opinion that the fire that damaged the AMC Eagle had been intentionally set as well. Also found was an Isuzu Trooper that had been damaged by a fire. A partially burnt wick was found in the gas cap area of the vehicle. Again, the Trooper indicated that the fire had been intentionally set. (Trial Transcript, pp. 350-359).

Connie Knauer testified that the Defendant believed that the Auto Haven dealership had "screwed him over on a car." The Defendant had stated that he didn't want them in business anymore. Knauer indicated that the Defendant told this to

Ferguson. She drove with Ferguson to the Auto Haven on the night of the fire. Ferguson left her in the car and advised her to wait for a period of time and then leave if he did not come back. When Ferguson came back to the car he was unsure whether or not he had been successful starting the fire, so he drove back around. Knauer testified that she saw a small flame under one of the vehicles under the tank. Ferguson again parked his car and went back to the Auto Haven. He returned shortly and they drove back home. Knauer also helped siphon gasoline out of Ferguson's one vehicle on the night of the Auto Haven fire. (Trial Transcript, pp.716-721, 734).

Mr. Shawn Sprock testified that the Defendant asked him and Ferguson to burn down the Auto Haven because he was upset with a vehicle that he obtained from the dealership. After the Auto Haven fire, Sprock testified that he saw the Defendant give Ferguson $200.00. Ferguson at that point told the Defendant to let him know the next time he need a job done. (Trial Transcript, pp. 605-606).

This evidence sufficiently established arson as charged at this case number. The evidence established that a fire had occurred, that the fire was intentionally and maliciously set, and that the Defendant ordered the fire to be set. The fire was set with the use of an incendiary device. The Auto Haven was an uninhabited building owned by another and damaged by the fire. There were also a number of vehicles damaged in the fire. This evidence sufficiently established Arson in violation of 18 Pa.C.S.A. §3301(a)(1)(i), (d)(1), and (d)(2).

At this case number the Defendant was also charged with Criminal Solicitation in violation of 18 Pa.C.S.A. §902(a).

> A person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, encourages or

requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which establish his complicity in its commission or attempted commission.

18 Pa.C.S.A. §903(a). The evidence presented by the Commonwealth was that the Defendant asked Ferguson to burn down the Auto Haven because he was unhappy with the vehicle that he bought from the dealership. The Defendant wanted the Auto Haven out of business. This evidence sufficiently established that the Defendant committed the crime of criminal solicitation.

Finally at this case number the Defendant is charged with Criminal Mischief in violation of 18 Pa.C.S.A. §3304(a)(1). As defined above, criminal mischief occurs when one damages the tangible property of another by means of fire or explosives. In this case the evidence established that the Defendant requested that Ferguson burn down the Auto Haven. Ferguson used incendiary devices in the vehicles, which resulted in a fire. The evidence was sufficient to establish that the Defendant committed criminal mischief.

At case number 294 C 2000 (Loveridge Fire) the Commonwealth presented the following testimony: Jacquelyn Loveridge testified that she lived in her trailer with her son, Gerald, and her boyfriend. On April 9, 1999 everyone was at home. Her son was sleeping in his room and she was in her room with her boyfriend. She heard a "pop" noise and then her room began to fill up with smoke. All three got out of the trailer and that they saw flames when they got outside. (Trial Transcript, pp. 170-174).

Miss Loveridge also testified that she knew the Defendant because they had lived together for a period of four years. She also identified the Defendant's truck. (Trial Transcript, pp. 176, 178-179). Gerald Loveridge testified that he was at home on the evening of April 9, 1999 asleep. He woke up and smelled smoke. He initially walked

11

out to the living room and saw smoke and then returned to his bedroom. In the bedroom he reached for his shoes that were on the grate of the register and it looked like the grate was melting on the bottom of his shoes. He returned to the living room and was told by his mother's boyfriend to go out the front door. (Trial Transcript, pp. 212-213).

Trooper Kevin Karwatsky testified that the fire was the fire was concentrated underneath the trailer. He found no problems with the underground electrical service or the breaker panel. These items suffered no fire damage in or around them and they had nothing to do with the fire. The fire had come up from underneath the trailer through the ductwork underneath the boy's bedroom. The fire went up through the vent in the boy's bedroom and the flames came in contact with the side of the boy's bed. The mattress and box spring were damaged. The Trooper testified that the fire was intentionally started with the available combustibles underneath the trailer. (Trial Transcript, pp. 459-469).

Miss Loveridge kept holiday decorations in a cardboard cylinder under that part of the trailer. (Trial Transcript, p. 169). The owner of the trailer, Mr. Merle Ray, testified that the trailer had no electrical problems and that it was valued at $5,000.00. (Trial Transcript, pp. 220-222). Trooper Myers also testified that the fire was intentionally set. (Trial Transcript, pp. 360-363).

Connie Knauer testified that she overheard the Defendant telling Ferguson that he wanted his ex-wife's trailer burned. The three of them drove past the trailer and the Defendant pointed it out. Knauer identified the Loveridge trailer as the trailer pointed out by the Defendant. A week or two later Knauer went back to the trailer with Ferguson. Again she remained in the car at Ferguson's request and did not see what Ferguson did when he left the car. Knauer further testified that the Defendant was upset that the fire

12

Circulated 06/17/2015 03:58 PM

had been set with people inside. He had not wanted anyone to get hurt. (Trial Transcript. pp. 723-727).

This evidence was sufficient to establish arson as charged at this case number. The evidence presented showed that there was indeed a fire; that the fire was intentionally set in disregard for whether or not people were inside, and the Defendant asked Ferguson to set the fire for him. The trailer was also valued at $5,000.00. The evidence was sufficient to convict the Defendant of Arson in violation of 18 Pa.C.S.A. §3301(a)(1)(i)(ii), (c)(2), and (d)(2).

At this case number the Defendant was also charged with Criminal Solicitation in violation of 18 Pa.C.S.A. §902(a). As stated above, criminal solicitation occurs if one "commands, encourages or requests" another engage in an activity that would constitute a crime. The evidence presented by the Commonwealth was that the Defendant wanted the Loveridge trailer burned down, that he asked Ferguson to do the job, and that he took Ferguson to the location and identified which trailer he was talking about. The evidence was sufficient to convict the Defendant of criminal solicitation.

Next the Defendant seeks reconsideration of sentence and in support thereof contends that the sentence was excessive and outside the applicable aggravated ranges of sentencing. The Defendant was sentenced to 10 to 20 years incarceration at count 1 at 292 C 2000 (Piper Fire) and count 1 at 294 C 2000 (Loveridge Fire). Both of these counts were first-degree felonies. A person convicted of a first-degree felony may be sentenced to incarceration for a period up to 20 years. 18 Pa.C.S.A. §1103(1). This Court considered the presentence investigation in reference to the above captioned cases, the

13

different counts. the sentencing guidelines, and the law of merger. (Sentencing Transcript, p. 18)

This Court placed on the record the belief that the evidence in these cases was overwhelming as far as guilt. Also placed on the record was the belief under common law, that certain crimes, including arson, were considered "tremendously serious onerous offenses against humanity." (Sentencing Transcript, pp. 18-20). This Court could not imagine anything worse than setting an occupied structure on fire in the middle of the night. Such action lacked any grounds for mitigation and deserved a maximum sentence. (Sentencing Transcript, p.20).

This Court also filed a Written Statement of Reasons for Deviation from the Sentencing Guidelines on September 12, 2001. (Please see attachments). The reasons included the fact that the Defendant paid someone else to set the fires, the fires were set at night and that the residences were occupied at the time of the fires. Five people were home when the Piper residence was caught on fire and three people were home when the Loveridge trailer was caught on fire. No consideration was given to the value of their lives. The actions of the Defendant could have resulted in eight potential homicides.

It is further evident by the record that this Court took into consideration the sentencing guidelines. At case number 292 C 2000 the Defendant also received a sentence at count 4 (Criminal Conspiracy). The standard range applicable at this count was twelve to twenty-four months with thirty-six months being the aggravated range. The Defendant received a sentence of three to six years at this count. The same standard range applied at count 5 (Criminal Solicitation) at case number 294 C 2000. The Defendant received a sentence of three to six years at this count.

14

Finally at count 1 (Arson) and count 5 (Criminal Solicitation) at case number 293 C 2000 the Defendant received a sentence within the standard range. At count 1 the standard range was twelve to twenty-four months and the Defendant received a sentence of two to four years. At count 5 the standard range was nine to sixteen months and the Defendant received a sentence of sixteen to thirty-two months. The sentencing imposed on the Defendant at the above captioned cases was appropriate.

For the reasons set forth above, this Court finds that the Defendant's appeal lacks merit.

BY THE COURT:

_____ J.
John E. Blahovec, Judge

Date: _January 17, 2002_

Attest:

_____
Clerk of Courts

cc: Leo Ciaramitaro, ADA
    Ron E. Valasek, Esq.